IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **KELLY WEEKS**  Plaintiff,  v.  **TEXAS A & M UNIVERSITY SYSTEM –at Galveston**  Defendant | CA No.  JURY DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a jury for any and all issues triable to a jury. This action seeks declaratory, injunctive, and equitable relief; compensatory and actual damages; and costs and attorney's fees for discrimination and retaliation suffered by Plaintiff, Kelly Weeks, due to TEXAS A & M UNIVERSITY SYSTEM at Galveston (hereinafter "Defendant") taking adverse employment actions against him. This action arises under the Title VII of the Civil Rights Act, as amended.

2. JURISDICTION

2.1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4), and Title VII of the Civil Rights Act, as amended, 28 U.S.C. § 1331.

2.2. Jurisdiction is appropriate because Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission alleging discrimination and retaliation.

2.3. Jurisdiction is also appropriate since the Department of Justice issued a decision allowing the Plaintiff the right to sue.

2.4. Declaratory and injunctive relief is sought pursuant to 28 U.S.C. § 2201 and 2202 and Title VII of the Civil Rights Act, as amended.

2.5. Actual damages, to include back pay and front pay are sought pursuant to Title VII of the Civil Rights Act, as amended.

2.6. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP and Title VII of the Civil Rights Act, as amended.

2.7. Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1) and Title VII of the Civil Rights Act, as amended.

## 3. VENUE

3.1. Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff, at all times while an employee of Defendant resided in this judicial district.

## 4. PARTIES

4.1. Plaintiff, Kelly Weeks, was an employee of Defendant and at the time his causes of action accrued he was a resident of Galveston County.

4.2. Defendant Texas A & M University System is a government entity as a state public institution of higher education and an employer qualified to do business in Texas, employing more than 500 regular employees. One of those campuses, located in Galveston, Galveston County is the subject of this action. Service can be effectuated by serving its Chancellor, John Sharp at 301 Tarrow, College Station, 77840.

## 5. STATEMENT OF THE CLAIMS

5.1. FACTS

5.2. Plaintiff is a male, over the age of 40. Plaintiff began working for Defendant Texas A&M University System-in Galveston as an Assistant Professor in September 2008.

        Plaintiff's work record was near perfect. Every year Plaintiff received positive evaluations with a merit raise.

5.3.    Defendant had engaged in a pattern and practice of favoritism and preference to female professors while specifically holding male counterparts to a higher standard without legitimate business reason.

5.4.    By way of example, Defendant brought in Joan Mileski and gave her tenure and the title of Associate professor upon hire without going through the P & T process and without her having any tenure credentials. Defendant continued this blatant gender preference by giving Joan Mileski temporary tenure appointment to the Department Head of Maritime Administration in 2012 without vote or voice from the departmental faculty as required by the University's rules. [1]

5.5.    Dr. Mileski hired a non-tenure track female (Dr. Parul Mathur) with a contract signed at a certain pay. Dr. Mileski then hired a male for a similar position. The male employee negotiated a higher salary than the female and despite having a signed contract in her possession, Dr. Mileski raised the female's salary to match the males.

5.6.    Defendant conferred tenure and multiple departmental positions to Wyndylyn von Zharen without a Ph.d. and outside of her academic field of Anthropology. Dr. Von Zharen uses and requires students to use speech biased against males, for example, instead of person, a student is required to say, "perdaughter." Students have stated that they do not complain or make a request as they do not want to fail the course.

5.7.    Dr. Jae Ko was denied promotion and tenure while two other females, up for tenure and promotion at the same time were promoted.

---

[1] Because <u>he was</u> not a tenured faculty member, Dr. Joe Knox, the Assistant Department Head, was not given the opportunity to fill the temporarily vacant position, as would be the norm. However, in early 2013, the Marine Science department elected Dr. Melanie Lasko, a female, as their interim department head despite the fact that she, too, was not tenure track just like Dr. Joe Knox.

5.8. To the contrary, Defendant promoted Dr. Antoinetta Quigg to full professor after only one year of being promoted to associate professor. Defendant had not conferred this type of special treatment upon a male professor.

5.9. Defendant's requirement of a photo headshot for each candidate up for P & T adds no value to the P & T process but does open the window for discrimination and can bias decisions based on appearance, particularly in Plaintiff's instance as the name "Kelly" could be male or female. Plaintiff has been unable to find any support for this requirement in his guidelines.

5.10. When chairing my P & T committee, Dr. von Zharen deliberately and maliciously failed to follow campus and university guidelines and rules. During the P & T process for both me and Dr. Grace Wang. Dr. Wang was allowed to essentially pick her own P & T committee (most members were on her mid-tenure committee). However, Plaintiff was not allowed to have any input on my committee and was forced to have the same committee as Drs. Wang and Mileski. Plaintiff was not afforded a reviewer on the departmental or campus committee in my area or an business area in general. The campus committee even stated in their letter that they were unable to properly evaluate someone in his area as they are biologists and chemists.

5.11. Plaintiff was told, first, not to complain about the committee composition because if he did he was going to shoot himself in the foot and that he was going to get tenure if he left it alone. Plaintiff was then told that the reason he was not getting tenure was because was a bad citizen and because he had complained. [2]

5.12. On February 21, 2014, Defendant denied Plaintiff tenure and promotion and informed him that his appointment was not renewed and that the next academic year was his last.

---

[2] When the letter of disapproval came in the female CAO gave me only 24 hours to file a rebuttal despite the fact that the letter was completed two weeks prior to being sent to Plaintiff. The rebuttal was summarily denied.

At the same time, Defendant granted promotion (and promotion and tenure) for the two females in his department.[3] There were items in Plaintiff's dossier that were the same as in the dossiers of his female department peers who were also up for promotion. However, these same items were judged vastly differently for Plaintiff, for example, his teaching performance was judged using different taxonomies and scales but not so for the females.

5.13. Defendant maintains a P & T mandate that committees for faculty in the same department up for the same grade promotion must have the same committee members to ensure that each is evaluated the same. Defendant wholly failed to do this in his case ensuring his disparate treatment.

5.14. Plaintiff's Department P & T Committee letter contains a sole signature while Defendant's guidelines clearly state that all members of the committee should sign the document to show agreement with what is contained in the report.

5.15. Defendant has a pattern and practice of getting rid of male employees to include at least three other white male employees.

5.16. Defendant's female agents have even stated, including, Dr. Mileski , in written context, that their goal is to diversify the faculty and they don't need to create a position for another white male.[4] Plaintiff does not understand the relevance of gender as it relates to position. In addition, Plaintiff has been told that phrases such as "we don't have any female Regents Professors" were said in the meeting awarding Dr. von Zharen the title of Regents Professor. Dr. Mileski vigorously promoted Dr. von Zharen for this award

---

[3] Dr. Joan Mileski has consistently evaluated Plaintiff's female peer with a different, more favorable standard than Plaintiff. This was extended on to the teaching load when Dr. Mileski increased the teaching load of the males (including me) but not the peer female at the same time assigning the males more intensive graduate classes while giving the females a lighter class load with primarily undergraduate students. When Dr. Weeks approached Dr. Mileski about the disparate increase in teaching loads, she told him that if he thinks he can get a better deal somewhere else, go and see. When Plaintiff's female peer approached Dr. Mileski with a concern for increased teaching loads, Dr. Mileski did not reply in such a hostile or threatening matter.
[4] In fact, that male was not hired.

despite the fact that Dr. von Zharen taught almost solely on-line, had few, if any, peer-reviewed journal articles and performed little service to the community as she lived outside the United States much of the year.

5.17. With the evidence the adverse actions, decisions, failure to follow University policy and procedure and rules, stated goals and comments, the basis of gender is the driving force in the decision process on Defendant's campus.

5.18. Defendant's actions towards Plaintiff, including failing to give him tenure, failing to promote him and terminating him a year in advance made his continued employment wholly unreasonable and his employment was constructively terminated on June 20, 2014.

5.19. Defendant placed Plaintiff in a hostile environment and discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 based on his gender (male) and for voicing his opposition to the disparate and less favorable treatment.

## 6. CAUSES OF ACTION

6.1. Based on the above facts, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act, as amended based on Plaintiff's gender and protected activity. The above-described actions of Defendant were so outrageous in character and so extreme in degree that they exceeded all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

6.2. As a direct and proximate result of the aforementioned arbitrary and capricious acts, the Plaintiff has suffered grievous harm, including but not limited to, humiliation and embarrassment among co-workers, customers and others; sustained damage to Plaintiff credibility; sustained damage to Plaintiff prospects for future employment.

## 7. ADMINISTRATIVE CONDITIONS PRECEDENT

7.1. Plaintiff brought this suit within ninety (90) days from the date of receipt of the DOJ's issuance of the notice of right to sue.[5]

7.2. Plaintiff has completed all administrative conditions precedent since Plaintiff filed Plaintiff's charge of discrimination.

## 8. PRAYER

8.1. WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

    8.1.1. Declare Defendant's conduct in violation of Plaintiff's rights;

    8.1.2. Enjoin the Defendant from engaging in such conduct;

    8.1.3. Order Defendant to reinstate Plaintiff, at full benefit and seniority level, at a pay comparable to others at the Associate Professor level at a campus acceptable to Plaintiff;

    8.1.4. Order Defendant to pay Plaintiff actual damages including but not limited to, back pay and front pay and benefits for which Plaintiff was qualified for the period remaining until Plaintiff's normal retirement age.

    8.1.5. Order Defendant to pay Plaintiff's costs and attorneys' fees in this action.

    8.1.6. Award Plaintiff compensatory damages for benefits and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

    8.1.7. Grant Plaintiff pre-judgment and post-judgment interest;

    8.1.8. Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

    8.1.9. Order and grant such other relief as is proper and just.

---

[5] Of note, the DOJ did not mail the letter on the date stamped on the letter itself.

                                          Respectfully Submitted,

                                          /s/ *Ellen Sprovach*
                                          Ellen Sprovach
                                          USDC SD/TX No. 22202
                                          Texas State Bar ID 24000672
                                          ROSENBERG & SPROVACH
                                          3518 Travis
                                          Houston, Texas 77002
                                          (713) 960-8300
                                          (713) 621-6670 (Facsimile)
                                          Attorney-in-Charge for Plaintiff

OF COUNSEL:
Gregg M. Rosenberg
ROSENBERG & SPROVACH

                                          ATTORNEYS FOR PLAINTIFF