UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KELLY WEEKS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-191 |
| | § | |
| TEXAS A&M UNIVERSITY | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kelly Weeks, filed suit against the Texas A&M University System on July 19, 2016. Weeks' Original Complaint alleged that Texas A&M University at Galveston, his employer, had discriminated against him under Title VII. Weeks asserts theories of hostile work environment, discrimination, and retaliation under Title VII. Dkt. 1.

On September 8, 2016, Weeks filed his Amended Original Complaint, naming two separate Defendants—the "Texas A&M University System at Galveston" and "Texas A&M University." Dkt. 8. In his Amended Complaint, Weeks alleges that he is a male over the age of 40 years old, and that he was an Assistant Professor at the Galveston campus of Texas A&M University from 2008 to 2014. Weeks alleged his "work record was near perfect" and that he received positive reviews and merit raises, but that his employer nonetheless engaged in a pattern and practice of giving preference to female professors, "while specifically holding male counterparts to a higher standard without a legitimate business reason."

The allegations in the Amended Complaint are rather difficult to follow, but it appears that Weeks alleges that he was discriminated against during the process of awarding promotions and tenure because of his gender; that he was treated differently in employment decisions because he is male; and that he was fired because he is male. Specifically, Weeks alleges that, on February 21, 2014, he was informed that he was denied tenure and that his employment would be terminated in the near future. Weeks further contends that that he was then "constructively terminated" on June 20, 2014. He alleges that he was placed "in a hostile work environment and discriminated and retaliated against" based upon his gender and because he "voic[ed] his opposition to the disparate and less favorable treatment." Weeks also alleges that he filed a complaint with the EEOC, that the EEOC issued him a right to sue letter, and that he had filed suit within 90 days from receipt of that letter.

On October 11, 2016, Defendant "Texas A&M University System" filed a motion to dismiss the Amended Complaint. Dkt. 12. Texas A&M University System asserted that Weeks' claims against it should be dismissed because 1) it is entitled to immunity under the Eleventh Amendment; and 2) Weeks failed to state a claim for discrimination or retaliation under Title VII against it because Weeks was actually employed by "Texas &M University at Galveston," not the larger "Texas A&M University System" itself.

According to the docket sheet of this case, Weeks did not formally request the issuance of summons on either Defendant until October 25, 2016. Dkt. 14, 15. On November 1, 2016, Weeks filed a return of service stating that service had been made upon "John Sharp, Chancellor, Texas A&M University System" on October 31, 2016, Dkt. 16,

and upon "Michael K. Young, President, Texas A&M University" on October 31, 2016, Dkt. 17. On December 29, 2016, both Defendants "Texas A&M University System" and Defendant "Texas A&M University" filed a joint motion to dismiss Weeks' Amended Complaint. Dkt. 25. That motion contended that Weeks' claims should be dismissed because Weeks failed to serve either Defendant within the 90-day period required by Rule 4 of the Federal Rules of Civil Procedure, and because Weeks failed to "commence this action against Defendant TAMU within the 90-day statutory limitations period." Weeks then filed a motion asking this Court to retroactively extend the deadline for service of process in this case. Dkt. 31.

Both sides have now filed their motions for summary judgment, each providing a considerable amount of summary judgment evidence and briefing in support. After due consideration of the motions, and the responses, the summary judgment record, and the applicable case law, the Court finds that there is no genuine dispute of material fact on Weeks' claims of discrimination, retaliation, and hostile work environment, and that Defendants' motions for summary judgment should be **GRANTED** and Week's motion should be **DENIED**.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

A genuine dispute of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view all facts and evidence in the light most favorable to the non-moving party." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.,* 730 F.3d 450, 452 (5th Cir. 2013) (quoting *Juino v. Livingston Par. Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir. 2013)).

If the summary judgment movant produces evidence tending to show that there is no genuine dispute of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine dispute of material fact for trial. *Celotex,* 477 U.S. at 321–323. The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.,* 245 F.3d 474, 493 (5th Cir. 2001), citing *Celotex,* 477 U.S. at 324. Further, the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). "If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted." *Celotex,* 477 U.S. at 322-23.

Importantly, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

legalistic argumentation." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Additionally, allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy the burden"), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (noting that an employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred ... is simply insufficient to support a jury verdict in plaintiff's favor"); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)) (alteration in original)).

Further, as noted above, parties have the obligation to specifically point out the evidence upon which they rely. Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A); *Am. Fam. Life Assur. Co. of*

*Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013). Under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The Fifth Circuit has explained that, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (concluding that a deposition "was never made part of the competent summary judgment record before the district court" because the party opposing summary judgment "failed to designate, or in any way refer to, the deposition as the source of factual support" for its response to the summary judgment motion).

When parties file cross-motions for summary judgment, courts are to "review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Housing Authority of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

## B. Title VII

Title VII prohibits an employer from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also provides that it is unlawful for employers to retaliate against employees who have opposed discrimination or who have participated in actions that are considered "protected activities" under the statute. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).

Weeks alleges that Defendants violated Title VII by discriminating against him because of his gender (by failing to promote him and constructively terminating him), unlawfully retaliating against him after he had complained about discrimination, and creating a hostile work environment.

Weeks' claim for gender discrimination under Title VII requires him to show that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably. *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

To establish a claim for retaliation under Title VII, Weeks must show that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took adverse employment action against [him]; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).[1] An employee has engaged in protected activity under Title VII if he has (1) "opposed any practice made an unlawful employment practice by this chapter," or (2)

---

[1] Prior to the Supreme Court's decision in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006), the Fifth Circuit "held that only 'ultimate employment decisions' ... satisf[ied] the 'adverse employment action' element of a prima facie case of retaliation" under Title VII. *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 at n.1 (5th Cir. 2016) (citations omitted). *Burlington Northern*, however, expanded the types of actions that can qualify as retaliatory, holding that an adverse action must merely be "materially adverse" to a plaintiff, which the Court defined as "harmful to the point that [such an action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 548 U.S. at 57). This is an objective test, requiring a legal inquiry into whether, in context, "a company's conduct well might dissuade a 'reasonable' worker from engaging in protected conduct." *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 261 (5th Cir. 2014).

"made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Byars v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000).

Finally, a hostile work environment claim based on gender under Title VII requires Weeks to show (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) such harassment was based on gender; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

> We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance.

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in original) (cleaned up). In this context, the Fifth Circuit requires that conduct must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not enough." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)). "Relevant factors are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 23 (1993)).

Where a plaintiff does not present direct evidence of discrimination, Title VII claims proceed under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must make a prima facie showing of discrimination. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Next, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)). Finally, the burden shifts back "to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). To show disparate treatment, a plaintiff must establish that his employer treated him more harshly than "similarly situated" employees for "nearly identical" actions. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). But "the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated account for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (plaintiff was not "nearly identical" to other employees who had never engaged in the conduct triggering termination).

## ANALYSIS

### A. Weeks' claims against Texas A&M University System should be dismissed.

Defendant Texas A&M University System contends that this Court lacks subject matter jurisdiction over Weeks' claims against it. Eleventh Amendment immunity must be resolved before the court reaches the merits of a suit. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285-86 & n.9 (5th Cir. 1999). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," and it bars an individual from suing a state in federal court unless the state consents to suit or unless Congress has clearly, unequivocally, and validly abrogated the state's sovereign immunity. *Jackson v. Texas Southern University*, 997 F. Supp. 2d 613, 623 (S.D. Tex. 2014). The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The Eleventh Amendment's "withdrawal of jurisdiction effectively confers an immunity from suit." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

This Eleventh Amendment protection applies not only actions in which a State is actually named as a defendant, but also "to certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), citing Poindexter v. Greenhow, 114 U.S. 270, 287 (1885). "'[W]hen the action is in essence one for the recovery of money from the state, the state is the real substantial party in interest

and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'" *Yowman v. Jefferson County Community Supervision & Corrections Dept.*, 370 F. Supp. 2d 568, 583 (E.D. Tex. 2005), citing *Doe*, 519 U.S. at 429. "Even in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002), citing *Doe*, 519 U.S. at 429.3 Under Texas law, state universities are agencies of the state and enjoy sovereign immunity under the Eleventh Amendment. *Jackson v. Texas Southern University*, 997 F. Supp. 2d 613, 623 (S.D. Tex. 2014).

But, in enacting Title VII, Congress unambiguously abrogated the States' Eleventh Amendment sovereign immunity and authorized private parties to bring suit for money damages against nonconsenting States pursuant to Congress's enforcement power under § 5 of the Fourteenth Amendment. *Fields v. Dept. of Public Safety*, 911 F. Supp. 2d 373, 379-80 (M.D. La. Nov. 27, 2012). Congress made clear its intent "when it amended Title VII's definition of 'person' to include governments, governmental agencies, and political subdivisions, 42 U.S.C. § 2000e(a), and simultaneously amended the definition of employee to include individuals 'subject to the civil service laws of a State government, government agency, or political subdivision,' 42 U.S.C. § 2000e(f)." *Ussery v. State of La. on Behalf of Louisiana Dept. of Health and Hospitals*, 150 F.3d 431, 435 (5th Cir. 1998), cert. dismissed, 526 U.S. 1013 (1999). To avoid this waiver, A&M University System argues that Title VII does not apply to it in this case because it was not Weeks' employer.

Instead, it contends that Texas A&M University—Galveston was Weeks' actual employer, and it contends that A&M University System is a wholly separate entity than Texas A&M University—Galveston

The Fifth Circuit has held that determination of employer status for Title VII purposes requires a two-part analysis. *Muhammad v. Dallas Cty. Cmty. Supervision and Corr. Dep't.*, 479 F.3d 377, 380 (5th Cir.2007). First, the court must determine whether the defendant meets Title VII statutory definition of "employer," *i.e.,* "a person engaged in an industry affecting commerce who has fifteen or more employees ...". 42 U.S.C. § 2000e(b). Second, the court must determine whether the requisite employment relationship exists by applying a "hybrid economic realities/common law control test." *Muhammad*, 479 F.3d at 380 (internal quotation marks omitted) (quoting *Deal v. State Farm Cty. Mut. Ins. Co.*, 5 F.3d 117, 118–19 (5th Cir. 1993)). The most important component of this hybrid test is the defendant's right to control the employee's conduct, including whether the defendant has the right to hire, fire, supervise, and set the work schedule for the employee. *Id.* The economic realities component of the hybrid test focuses on whether the defendant in question paid the employee's salary, withheld taxes, provided benefits, and set terms and conditions of employment. *Id.*

Although Weeks points to statutory language that he now contends shows Texas A&M University System "control[s]" Texas A&M University—Galveston through its board of directions, and he next argues that is evidence that Weeks was himself "controlled" by Texas A&M University System, the Court find that his arguments unduly collapse the analysis. There is no doubt that Texas A&M University System is a statutorily

different entity than Texas A&M University on the one hand and Texas A&M University—

Galveston on the other. *See, e.g., Villarreal v. Texas A & M Sys.*, 561 Fed. App'x. 355,

356 (5th Cir. 2014); *Ridha v. Texas A & M Univ. Sys.*, CIV.A. 4:08-CV-2814, 2009 WL

1406355, at *4 (S.D. Tex. May 15, 2009); TEX. EDUC. CODE ANN. § 87.201 (Subtitle D of

Title 3 of the Texas Education Code generally establishes "The Texas A&M University

System" in Chapter 85, then establishes "Texas A&M University" in Chapter 86, before it

finally addresses "Other Academic Institutions in the Texas A&M University System" in

Chapter 87, and Subchapter C of Chapter 87 is entitled Texas A&M University at

Galveston.). The Texas Education Code's provision establishing Texas A&M

University—Galveston underscores this distinction. While some professors at Galveston

may be an employee of one entity, the other, or both, the relevant inquiry here is who

Weeks' actual employer was. After considering the evidence in this case in light of the

Fifth Circuit's caselaw, the Court finds that there may have been some policies

promulgated by the Texas A&M University System, and that some decisions were made

by the University System or Board of Regents and then implemented by Texas A&M

University—Galveston, but it was Texas A&M University —Galveston who had the right

to control Week's conduct, including hiring and firing him, and setting his work schedule.

Texas A&M University System did not pay Week's paycheck and issue him a W-2, Texas

A&M University—Galveston did. The employment paperwork Weeks signed stated he

was an employee of Texas A&M University —Galveston. And when he was ultimately

told that he was being denied "tenure and promotion," that February 21, 2014 letter came

on Texas A&M University—Galveston letterhead, signed by another Texas A&M

University—Galveston employee. Accordingly, the Court finds that the evidence in this case shows that Texas A&M University System was not Weeks' "employer" under Title VII, and the Court therefore find that Weeks' claims against Texas A&M University System should be **DISMISSED**.

## B. Timeliness of Weeks' Claims Against Texas A&M University—Galveston

Next, the Court turns to Texas A&M University—Galveston's contention that Weeks failed to bring his lawsuit within the 90-day statutory limitation period. There are two statutory prerequisites for filing a Title VII action in federal court: (1) the timely filing of a complaint with the EEOC; and (2) the receipt of the statutory notice of the right to sue. *Bowers v. Potter*, 113 Fed. App'x. 610, 612 (5th Cir. 2004) (unpublished) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)). Title VII further provides that a plaintiff has ninety days to file a civil action after receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12177; *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982)); *Dortch v. Mem'l Hermann Healthcare Sys.—Sw.*, 525 F. Supp.2d 849, 859 (S.D. Tex. 2007).

The requirement to file a lawsuit within the ninety-day limitation period is strictly construed. *Bowers*, 113 Fed. App'x. at 612 (citing *Ringgold v. Nat'l Maintenance. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986)). In discussing this filing deadline, the Fifth Circuit has cautioned, "Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.' For all intents and purposes, the ninety-day

filing period acts as a statute of limitations." *Bowers*, 113 Fed. App'x. at 612 (internal citations omitted).

Weeks received a letter dated February 21, 2014, informing him that he would not be recommended for tenure or promotion and that his last day of employment with Texas A&M University—Galveston would be May 31, 2015. On August 7, 2014, Weeks filed a Charge of Discrimination alleging that he had been discriminated against by "Texas A&M University System." Weeks' right to sue letter was mailed on April 20, 2016, informing him that he had the right to file a lawsuit based upon his "EEOC Charge against Texas A&M University System." On July 19, 2016, Weeks filed this lawsuit, naming only "Texas A&M University System—at Galveston" as the sole Defendant. On August 29, 2016, the Attorney General of Texas, on behalf of Texas A&M University System, informed Weeks' attorney that she had named the incorrect entity, but Weeks did not file an Amended Complaint actually naming Texas A&M University—Galveston until September 26, 2016. Dkt. 8. Even though September 26, 2016 is well past the 90-day limit for Weeks' lawsuit, Weeks' claim against Texas A&M University—Galveston is timely, nonetheless, if the Court finds that it relates back to the original complaint. *See, e.g., Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 693 (S.D. Tex. 2013) ("While Mazurkiewicz filed this case within the 90–day period (on November 16, 2012, in response to an EEOC notice dated August 21, 2012), the original complaint did not name CMH as a defendant, but instead listed parent company Clayton Homes.").

Federal Rule of Civil Procedure 15(c)(1)(C) provides that an amended pleading "relates back" when the amendment changes the party or the naming of the party against

whom a claim is asserted, if Rule 15(c)(1)(B)8 is satisfied ***and*** if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. FED. R. CIV. P. 15(c)(1)(C). The Supreme Court has explained that "relation back under Rule 15(c)(1)(C) depends on what the [new] party knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 130 S.Ct. 2485, 2490, 177 L.Ed.2d 48 (2010).

For claims requiring an EEOC investigation prior to filing suit, a defendant's participation in the administrative process may constitute the requisite Rule 15(c)(1)(C) knowledge. *See Barkins v. Int'l Inns, Inc.*, 825 F.2d 905 (5th Cir. 1987). *Barkins* was a Title VII case in which the two plaintiffs incorrectly sued Holiday Inns, Inc. in a timely complaint. Id. at 906. After the 90–day period to file suit had expired, plaintiffs amended to add the correct defendant, International Inns, Inc. *Id.* The Fifth Circuit held that this amendment related back, holding that a late-added defendant received sufficient notice of suit when it "participated in the EEOC hearings leading up to the suit." *Id.* at 907 (citation omitted). The *Barkins* court also noted that "International Inns was aware of the suit against Holiday Inns through the shared counsel" and that "International Inns point[ed] to no prejudice from [the plaintiffs'] mistake." *Id.*; see also *Krupski*, 130 S.Ct. at 2497–98 (finding relation back when proper and improper defendant were related corporate entities with similar names, proper defendant knew name similarity was confusing for customers,

and the complaint "made clear" that the plaintiff intended to sue the proper defendant but for the mistake concerning the proper party's identity). As in *Barkins*, the same lawyers (from the Office of the Attorney General of the State of Texas) are appearing on behalf of both Texas A&M University System and Texas A&M University— at Galveston, Texas A&M University—Galveston participated in the EEOC investigation process, and Texas A&M University— at Galveston has not shown any prejudice from being brought into the suit after the 90-day period had elapsed. Accordingly, the Court finds that the Amended Complaint relates back to the original complaint and that Weeks' claims against Texas A&M University— at Galveston are timely.[2]

## C. Title VII Claims

### 1. Gender Discrimination/Disparate Treatment

Weeks' claims of gender discrimination, that he was denied employment advancement and treated less favorably than female colleagues, proceed under the *McDonnell-Douglas* framework set out above. The Court first examines whether the summary judgment evidence sufficiently shows a prima facie case. Weeks alleges that he was a male, and that he was denied tenure, and thus ultimately terminated from his "tenure track" position, because of his gender. For its part, Texas A&M University—Galveston contends that Weeks has not brought forth any evidence to show that he was "qualified"

---

[2] Further, the Court hereby **GRANTS** Weeks' motion to retroactively extend the time for service of process. Dkt. 31. The Court finds that the extension is warranted on the record, including the fact that counsel for the Defendant, Texas A&M University System— at Galveston, had ample notice of the allegations, the EEOC investigation and the lawsuit, and that Weeks was bringing a lawsuit under Title VII. Service was executed, the case has begun, and the Court therefore exercises its broad discretion in this area.

for the tenure he sought at Texas A&M University—Galveston, or that he was treated less favorably than similarly situated (female) professors. *See, e.g., Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

The Court notes here that the types of "adverse employment actions" that can be the basis for a Title VII claim for gender discrimination are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (quoting *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). But, in this case, Weeks' briefing focuses more on complaints about the process by which his application and qualifications were reviewed, evaluated, or reconsidered. *See, e.g., Cardenas–Garcia v. Tex. Tech. Univ.*, 118 Fed. App'x. 793, 794 (5th Cir. 2004) ("Performance reviews and investigations ... do not qualify as ultimate employment actions."). The Court finds that the vast majority of Weeks' complaints are not the kind of adverse actions that support a Title VII claim.

Further, the Court notes the dearth of "similarly situated" comparators. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (noting that employees are generally not similarly situated if they have different supervisors, different work responsibilities, or work for different divisions of a company). The Court finds that the only relevant "similarly situated" employee to Weeks was Dr. Wang, because both she and Weeks were up for tenure in the same department at the same time. Weeks alleges that Wang was not as qualified as he was, that she received better reviews from the committee even though she made "grammatical errors," and that he was prevented from choosing members of the committee while she was allowed to choose her members. But Weeks also alleges that he

received positive feedback and that he was even ultimately recommended for tenure by his own department's committee, even though that recommendation was not approved.

Even assuming that Weeks has established a prima facie case, Texas A&M University—Galveston contend that it had a legitimate, non-discriminatory reason for not granting Weeks tenure. First, it points to the department committee's "strong reservation" about Weeks, which it communicated along with its positive vote recommending him for tenure. The letter highlights serious concerns about Weeks' organization, the effectiveness of his communication, and most crucially, his veracity and the accuracy with which he has described the required professional accomplishments. Weeks submitted at least one syllabus for a course that he had not taught, and his lists of publications had similar logical flaws that led the committee to question whether these writings had, in fact, been "published," or even actually written. The letter reveals more than just harsh comments on grammar and style—instead it addresses a litany of "troubling issues" raising the question as to whether Weeks had, intentionally or not, misstated his qualifications and his experience. The ultimate vote of the Promotion & Tenure Committee was split two-two, and the P&T Committee's letter of November 8, 2013 reflected the concerns raised in the department's letter. Patrick Louchouarn's letter of December 4, 2013 to the Executive Vice President and Provost, also contained a concern that Weeks had "inflat[ed]" his achievements. . . Of note, I would like to highlight a number of questionable statements of achievements presented in Dr. Weeks' CV." This letter noted that Weeks had actively misstated his titles and importance of his activities on journals and other endeavors, and that he had also misstated the number of graduate students he had advised since 2008. .

"Dr. Weeks lists ten graduate students advised since 2008. Upon inspection, it turns out that nine of these students were teaching assistants, not actually advised graduate students. Graduate advising is a critical component of scholarship and citing 'teaching assistants' as graduate student advised is a misrepresentation of the mentorship that is required of supporting graduate work."

Weeks has not provided any evidence to show that these reasons were mere pretext. He has not shown that any similar concerns about veracity or "inflation" were raised regarding Wang but that she was nonetheless granted tenure. "[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels [s]he has been discriminated against." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 709 Fed. Appx. 243, 248–49 (5th Cir. 2017). Because Weeks has failed to bring forth competent summary judgment evidence on this point, after considering the summary judgment record, the applicable law, and the arguments of the parties, the Court finds that summary judgment for Defendant should be **GRANTED** and summary judgment on this claim for Plaintiff should be **DENIED**.

## 2. Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a claim of retaliation, a plaintiff must first establish a prima facie case by showing: "(1) he participated in an activity protected by Title VII; (2) his

employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir.2007). The burden then shifts to the employer to provide a legitimate, nonretaliatory reason for the adverse employment action. *Id.* The plaintiff then must establish that the employer's reason was pretext for retaliation. *Id.* The Supreme Court has held that a plaintiff alleging retaliation under Title VII must establish that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013).

Weeks contends that his "protected activity" was complaining to the Ombudsman during the tenure review process, and that he was told "he was a bad citizen'" and then denied tenure as a result of his complaints. Again, his complaints rely on his misunderstanding of the concerns about his candidacy—the summary judgment evidence shows that Texas A&M University—Galveston personnel had serious and detailed concerns about Weeks' inflating and misstating his credentials, and these concerns went far beyond mere scrutiny of his syntax or grammar. The summary judgment evidence shows that Weeks was not recommended for tenure because members of the reviewing committees raised a number of concerns about his credentials, and Weeks has not shown that these concerns were mere pretext. After considering the summary judgment record, the applicable law, and the arguments of the parties, the Court finds that summary judgment for Defendant should be **GRANTED** and summary judgment on this claim for Plaintiff should be **DENIED**.

### 3. Hostile Work Environment

A plaintiff can state a Title VII claim when "discrimination based on membership in a protected class creates a hostile or abusive work environment." *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Carr v. Sanderson Farms, Inc.*, 2016 WL 6872007, *2 (5th Cir. Nov. 21, 2016). "To establish a hostile work environment claim under Title VII, the plaintiff must prove that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or other protected status]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Williams–Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir.), cert. denied, 135 S. Ct. 106 (2014) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). With reference to the third element, a "bare allegation of harassment, unrelated to membership in any protected class, cannot form the basis of a Title VII claim." *Carr*, 2016 WL 6872007 at *2. To satisfy the fourth element of a Title VII claim based on a hostile work environment, "the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.*,——U.S.——, 133 S. Ct. 2434, 2441 (2013) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Weeks complains that he was "repeatedly screamed at" by Dr. Mileski, but he also submitted evidence that she "yelled" at Dr. Wang as well. He points to statements Dr. Mileski made about his tenure application, in which she discouraged him from complaining

about perceived unfairness. He also generally complains of "harassing behavior from leadership" that he claims was "severe and pervasive," but he does not point to any summary judgment evidence to support this conclusory statement.

After considering the summary judgment record, the applicable law, and the arguments of the parties, the Court finds that summary judgment for Defendant should be **GRANTED** and summary judgment on this claim for Plaintiff should be **DENIED**.

## CONCLUSION

After full consideration of the relevant summary judgment evidence, the record in this case, the motions and briefing of the parties, and the applicable law, the Court finds that Weeks' motion for extension of time (Dkt. 31) should be **GRANTED**; that the motion for summary judgment filed by Texas A&M University System and Texas A&M University—Galveston (Dkt. 39) should be **GRANTED**; and the motion for summary judgment filed by Plaintiff Weeks (Dkt. 38) should be **DENIED**.

**ALL OTHER PENDING MOTIONS ARE DENIED AS MOOT.**

SIGNED at Galveston, Texas on ~~February 21~~ 2018.

~~George C. Hanks~~
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE